(C. D. 1674)

GORMAN ANDERSON CORP.
SINTERED CARBIDE CORP. } *v.* UNITED STATES

United States Customs Court, Second Division

(Decided January 27, 1955)

*Sharretts, Paley & Carter* (*Howard C. Carter* of counsel) for the plaintiffs.

*Warren E. Burger*, Assistant Attorney General (*Richard H. Welsh*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge:. Merchandise described in the record as Mordax horseshoe studs was classified by the collector of customs as articles of metal, not specially provided for, and duty was imposed thereon at the rate of 22½ per centum ad valorem pursuant to the provisions of paragraph 397 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 397), as modified by the General Agreement on Tariffs and Trade (82 Treas. Dec. 305, T. D. 51802).

It is the contention of the plaintiffs that the commodity should be classified in the provision for "* * * studs, * * * lathed, machined, or brightened," and dutiable accordingly at the rate of 15 per centum

ad valorem as provided in paragraph 332 of said act (19 U. S. C. § 1001, par. 332), as modified by said general agreement.

The pertinent text of the competing statutes is here set forth—

Paragraph 397 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:

   \*        \*        \*        \*        \*        \*        \*

    Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer:

\*        \*        \*        \*        \*        \*        \*

        Other (except slide fasteners and parts thereof)____22½% ad val.

Paragraph 332 of said act, as modified, *supra*:

Rivets, studs, and steel points, lathed, machined, or brightened, and rivets or studs for nonskidding automobile tires_____15% ad val.

The only witness in the case was Rolf L. Germann, who, since 1949, had been vice president, general manager, and treasurer of the Sintered Carbide Corp., and his testimony remains uncontradicted.

Germann testified, in substance, that he was familiar with the imported merchandise which is traded under the name of "Mordax" horseshoe studs and representative samples were received in evidence as follows: Exhibit 1—type VH horseshoe studs; exhibit 2—type R; exhibit 3—type N; exhibit 4—type C. In evidence as exhibit 5 is a folder which was received to illustrate in graphic form the use of studs on horseshoes as applied by blacksmiths. It was pointed out that type NHW is like exhibits 3 and 4 differing only in size. The witness stated that the studs are used mostly in northern sections of the country, mentioning Minnesota and Michigan, where weather conditions "necessitate the application of these horseshoe studs to the shoes of the horses"; that they can be used all year round, but are more frequently used during the winter time "to prevent the horse from sliding or having an unsafe feeling on the ground." Germann stated that exhibits 1 through 4 had been machined and that "stud" was the only name applied to them.

As to the first three exhibits, the witness stated—"There is a lathed operation involved and a milling operation and a boring operation." An examination of exhibits 1 through 4 indicates that all have been bored at one end.

When interrogated by the court, the witness explained that the studs were made primarily for the safety of the horse to prevent it from slipping on ice or icy surfaces. "This little tip that you see in the center is a carbide tip and that tip, due to the weight of the horse digs into the ice sufficiently to prevent it from slipping." Their use

on race horses, to quote the witness, "is primarily to save the life of the horseshoe, so that the horse doesn't have to be re-shoed [*sic*] too often."

Germann, who was educated in Switzerland where he received a degree as mechanical engineer at the Swiss College of Engineering in Zurich, stated that these studs originated in Switzerland—"The Swiss cavalry apparently originated this type of stud for their horses."

It is not disputed that the subject merchandise is an article wholly or in chief value of metal; consequently, the controversy resolves itself into a question of law, namely, whether or not the articles properly fall within the provision for "* * * studs, * * * lathed, machined, or brightened." In other words, are the imported articles commonly or commercially known as studs, as that term is used in said paragraph 332. It is elementary, of course, that the common and commercial meaning of a statutory provision is presumptively the same in the absence of convincing proof or other circumstances to the contrary. *American Felsol Co. et al.* v. *United States,* 25 C. C. P. A. (Customs) 367, T. D. 49454, and cases cited therein.

To establish a commercial meaning different from the common meaning, satisfactory proof must be introduced to the effect that a given term has a meaning throughout the trade and commerce of the United States which is uniform, definite, and general, and not personal, partial, or local. We are clearly of the opinion that the testimony of the only witness in the case, which is summarized above, is insufficient to establish within the rule above announced a trade meaning of the term "studs" different from its ordinary or common meaning.

In the case of *United States* v. *Wakem & McLaughlin,* 6 Ct. Cust. Appls. 385, T. D. 35923, the question before the court was whether grenadine is a "fruit sirup." A single witness testified that "we"—evidently meaning the firm which he represented—"consider it among the fruit sirups." Commenting upon this the court said—

Without going to the length of holding that under no circumstances could commercial designation be shown by a single witness, we have no difficulty in saying that this testimony falls far short of establishing a knowledge of the trade usage which entitled the witness to testify to the fact of general and uniform usage such as is required.

Our appellate court in *United States* v. *Oberle,* 1 Ct. Cust. Appls. 527, T. D. 31545, had before it the question whether very small mirrors should be classified as toys or as mirrors. It was there stated—

* * * But one witness testified, an employee of the importers, that these articles were commercially known as toys. One witness is insufficient for the purpose of establishing commercial designation when the testimony is no other than that included in this record.

Plaintiffs contend that the testimony of the sole witness, Germann, conclusively establishes that "stud" is the only name which has been

applied to the articles represented by exhibits 1 through 4; that their sole use is in conjunction with horseshoes, and, hence, are within the *eo nomine* provision for studs contained in paragraph 332, as modified, *supra*.

Plaintiffs further contend that an *eo nomine* designation, such as that for "studs," without limitation beyond the requirement that they be "lathed, machined, or brightened," brings into operation the recognized principle that an *eo nomine* designation of an article in a statute "without limitations or a shown contrary legislative intent, judicial decision, or administrative practice to the contrary, and without proof of commercial designation, will include all forms of said article," citing *Nootka Packing Co. et al. v. United States*, 22 C. C. P. A. (Customs) 464, T. D. 47464.

Before applying that principle to the case at bar, however, we must first determine whether the so-called Mordax studs are, in fact, "studs" within the concept of that term as it is used in paragraph 332, *supra*. As aids to the solution of that question, we have examined the following lexicographic definitions of the word "stud":

The New Century Dictionary, volume two:

**stud**, *n.* * * * A post or upright prop, as in the wall of a building; esp., one of the smaller vertical timbers, of the height of a single story, to which laths or boards are nailed in forming partitions or walls in houses; also, a boss, knob, nail-head, or other protuberance projecting from a surface or part, esp. as an ornament; also, a kind of small button or fastener, commonly of metal, bone, or the like and in the form of a small knob and a disk connected by a stem, used (when passed through small buttonholes or the like) for holding together parts of dress (as shirts) or for ornament * * *; also, any of various projecting pins, lugs, or the like on machines, etc.; * * *.

Knight's American Mechanical Dictionary (1876):

**Stud.** 1. (*Machinery.*) A boss or protuberance designed to hold an attached object in place.

2. (*Carpentry.*) An upright scantling.

3. (*Wear.*) A button with a shank and disk.

4. A nail with a large head.

5. (*Nautical.*) A cast-iron brace across the minor diameter of a cable link, to prevent collapse.

Chambers Technical Dictionary (1953):

**stud** (*Carp.*). An upright scantling in a timber framework or partition.

**stud** (*Eng.*). A shank, or headless bolt, generally screwed from both ends and plain in the middle. It is permanently screwed into one piece, to which another is then secured by a nut.

**stud** (*Horol.*). (1) The part to which the outer coil of a balance spring is attached.—(2) A short vertical pin.

Funk & Wagnalls New Standard Dictionary of the English Language (1942):

**stud,** *n.* **1.** * * * **2.** A knob, round-headed nail, or other object forming a small protuberant ornament. (1) An ornamental button worn in a shirt-front or cuff. (2) A round-top nut for a stud-bolt. (3) An ear-like projection over which to draw and hold a lacing. (4) A hobnail.

Webster's New International Dictionary (1948):

**stud,** *n.* * * * **1.** * * * **2.** A projecting knob, rod, pin, or the like; esp., a kind of nail with a large head, used chiefly for ornament; an ornamental knob; a boss. **3.** A detachable buttonlike device, made in various forms, to be inserted through one or more buttonholes or eyelets and serve as a fastener, for ornament, etc.

An examination of these definitions discloses that a stud may be used in machinery, carpentry, wearing apparel, and horology, among other purposes. In other words, it is apparent that studs may be used for a variety of utilitarian and ornamental purposes. An examination of the context of paragraph 332, *supra*, is also revealing since it indicates clearly that the term "studs" may include articles designed for utilitarian purposes as well as those intended for ornamental use. It will be observed that said paragraph 332, after enumerating "Rivets, studs, and steel points, lathed, machined, or brightened," provides further for "rivets or studs for nonskidding automobile tires." Their use for nonskidding automobile tires definitely indicates an exclusively utilitarian character. Since the provision for "Rivets, studs, and steel points" in the first part of paragraph 332 is not conditioned upon use, it was logically designed to embrace any products appropriately responding to the terms "Rivets, studs, and steel points."

It is noted that the definition of the noun "stud" in Funk & Wagnalls New Standard Dictionary of the English Language, above quoted, includes as the fourth definition in meaning **2** "A hobnail." The noun "hobnail" is defined as follows:

Funk & Wagnalls New Standard Dictionary of the English Language (1942):

**hobnail,** *n.* **1.** A short nail with a large thick head, *used for studding the soles of heavy shoes.* * * * [Italics supplied.]

Webster's New International Dictionary (1948):

**hobnail,** *n.* A short, sharp-pointed, large-headed nail, used esp. for studding soles of shoes; hence, a clownish person; a rustic.

The New Century Dictionary, volume one:

**hobnail,** *n.* A short, large-headed nail for protecting the soles of heavy boots and shoes; hence, a man wearing such shoes; a rustic; a clown. * * *

Knight's American Mechanical Dictionary (1876):

**Hobnail.** A short, thick nail, with a pointed tang, a large head, and with pendent claws, which pierce the boot-sole.

The Mordax stud in its use on a horseshoe might be compared to the use of the hobnail on a man's shoe and, since Funk & Wagnalls dictionary includes a hobnail in its definitions of the noun "stud," we are of the opinion that Congress, in the use of the term "stud," employed the word in a broad sense as embracing not only studs having ornamental uses but, as well, studs for utilitarian purposes. As a matter of fact, the Mordax stud is fairly described in Funk & Wagnalls definition of "hobnail," *supra*, if we substitute the word "horseshoes" for the words "the soles of heavy shoes."

In view of the broad application of the definitions of the noun "stud" to articles of wood, as well as of metal having multifarious uses, we are impelled to adopt the definition of the term "stud" which most aptly fits the subject merchandise.

The cases referred to by the parties have been given consideration in arriving at the conclusion reached herein.

Upon the record and aided by the authorities cited, we find and hold that the Mordax studs in controversy should be classified for duty as studs in paragraph 332, as modified, *supra*, as claimed by plaintiffs, and subjected to duty at the rate of 15 per centum ad valorem. To that extent the protest is sustained.

Judgment will be entered accordingly.