(C. D. 1794)

ALLTRANSPORT, INCORPORATED *v.* UNITED STATES

United States Customs Court, First Division

(Decided July 26, 1956)

*Barnes, Richardson & Colburn* (*Edward N. Glad* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

OLIVER, Chief Judge: This protest relates to merchandise, described on the invoice as "pins of brass," which was assessed at 1 cent each and 50 per centum ad valorem under paragraph 1527 (c) (2) of the Tariff Act of 1930, as parts, valued under 20 cents per dozen pieces, of articles, valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person. Paragraph 1527 (c) (2), so far as pertinent, reads as follows:

Articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, cardcases, chains, cigar cases, cigar cutters, cigar holders, cigar lighters, cigarette cases, cigarette holders, coin holders, collar, cuff, and *dress buttons*, combs, match boxes, mesh bags and purses, millinery, military and hair ornaments, pins, powder cases, stamp cases, vanity cases, watch bracelets, *and like articles; all the foregoing and parts thereof, finished or unfinished*:

\* \* \* \* \* \* \*

(2) composed wholly or in chief value of metal other than gold or platinum (whether or not enameled, washed, covered, or plated, including rolled gold plate), or (if not composed in chief value of metal and if not dutiable under clause (1) of this subparagraph) set with and in chief value of precious or semiprecious stones, pearls, cameos, coral, amber, imitation precious or semiprecious stones, or imitation pearls, 1 cent each and in addition thereto three-fifths of 1 cent per dozen for each 1 cent the value exceeds 20 cents per dozen, and 50 per centum ad valorem. [Italics added.]

Plaintiff claims that the brass pins in question are parts of jewelry. Paragraph 1527 (a) (1) and (2), as modified by T. D. 51802, supplemented by T. D. 51939, provides for parts of jewelry as follows:

| Tariff Act of 1930, para-graph | Description of Products | Rate of Duty |
|---|---|---|
| 1527 (a) (1) and (2) | Jewelry, commonly or commercially so known, finished or unfinished (including parts thereof): Composed wholly or in chief value of gold or platinum, or of which the metal part is wholly or in chief value of gold or platinum_____ | 40 % ad val. |
| | All other, of whatever material composed, valued above 20 cents per dozen pieces_____ | 55% ad val., but not less than 50% of the amount payable on the basis of the duty "existing" (within the meaning of Section 350, Tariff Act of 1930 as amended by the Act of July 5, 1945) on January 1, 1945 if the article were not dutiable under paragraph 1527, Tariff Act of 1930. |

Plaintiff contends that the merchandise in question would be dutiable under the foregoing amended paragraph 1527 (a) (1) and (2) as parts of jewelry, but for the fact that the brass pins involved herein are, by agreement of the parties, valued at under 20 cents per dozen pieces. Plaintiff, therefore, seeks classification of the brass pins under the residuary provision in paragraph 397 of the Tariff Act of 1930, as modified by T. D. 51802, for articles, composed wholly or in chief value of base metal, not plated with platinum, gold, or silver, or colored with gold lacquer, carrying a dutiable rate of 22½ per centum ad valorem.

At the trial, counsel for the respective parties stipulated that the merchandise under consideration (plaintiff's exhibit 1) is part of a stud and that, as such, it is exclusively used in the manufacture of stud backs (plaintiff's exhibit 2). It was further agreed between the parties that the finished studs (plaintiff's exhibit 3) are "either in chief value of metal, other than gold, silver, or platinum, and if not in chief value of metal, then set with and in chief value of imitation

precious or semiprecious stones," (R. 5) and are valued at over 20 cents per dozen pieces and not over $5 per dozen pieces.

By virtue of the stipulated facts, the principal question before us relates to the finished studs, of which the imported brass pins are admittedly integral parts. The stud in evidence (exhibit 3, *supra*) represents "one of the many samples of finished studs." (R. 5.) It is the kind that is usually worn with men's wear. The primary issue herein is whether the studs are articles, designed to be worn on apparel or carried on or about or attached to the person, as contemplated by paragraph 1527 (c) (2), *supra*, or whether they are jewelry, "commonly or commercially so known," provided for in paragraph 1527 (a) (1) and (2), as modified, *supra*.

The oral testimony is directed toward a determination of that question. Each side introduced one witness.

Plaintiff's witness was the president of the Tedley Corp., the importer of these brass pins, whose business is to "sell parts and metal stampings, made in accordance with orders we obtain in this country, made by the factories in Switzerland." The witness admitted that he never sold studs, of which the imported items are parts. His testimony merely shows that he has observed such studs on display in jewelry departments of department stores, in men's wear stores, in jewelry stores, and in women's specialty stores. He stated that studs are "basically being sold in a set of 2 cuff links and 3 studs."

Defendant's witness testified that he has been in the button business for 14 years and that, throughout the period, he has bought and sold studs, of which the imported brass pins are parts. He identified a collection of items (defendant's collective illustrative exhibit A) that are "described in the trade" as stud buttons. Each of these articles is substantially the same, including the brass pin, as the stud in evidence (exhibit 3, *supra*), which the witness characterized as "dress stud," that is "used for men, for evening wear." The only difference is in the heads of the studs; some are a novelty in character; others are ornamental. The witness testified that the studs "are sold in the department stores by us" and "on notion counters only." He also referred to certain so-called "shank buttons" (defendant's collective illustrative exhibit B), but they are materially different from the studs or stud buttons in controversy. The shank buttons have no bearing on the issue in this case.

Both witnesses agreed with the definition of "stud," read to them by Government counsel from Webster's International Dictionary, as follows:

An ornamental button of various forms worn in a shirt front, collar, wrist band, or the like, not sewed in place, but inserted through a buttonhole or eyelet, and transferable.

Somewhat the same definition appears in Funk & Wagnalls New Standard Dictionary as follows:

**stud,** *n.* \* \* \* **2.** \* \* \* (1) An ornamental button worn in a shirt-front or cuff.

Defendant's brief quotes from "The New Century Dictionary, volume two," as follows:

stud, *n.* \* \* \* also, a kind of small *button* or fastener, commonly of metal, bone, or the like and in the form of a small knob and a disk, connected by a stem, used (when passed through small buttonholes or the like) for holding together parts of dress (as shirts) \* \* \*. [Italics supplied.]

"The law is well settled that the classification by the collector and his official acts are presumptively correct" (*McKesson & Robbins, Inc.* v. *United States*, 27 C. C. P. A. (Customs) 157, C. A. D. 77), and it is equally "well established that the collector is presumed to have found every fact to exist that was necessary to sustain his classification" (*E. I. du Pont de Nemours & Co.* v. *United States*, 27 C. C. P. A. (Customs) 146, C. A. D. 75). Under those principles, the presumption of correctness attaching to the collector's classification includes a finding by the classifying officer that the imported brass pins are parts of studs or stud buttons that are designed to be worn on apparel or carried on or about or attached to the person.

It is "fundamental in customs law that when the classification of the collector is challenged, the dual burden of proving that such classification is incorrect and that its own claimed classification is correct, rests upon the importer." *Yardley & Co., Ltd., et al.* v. *United States*, 41 C. C. P. A. (Customs) 85, C. A. D. 533. On the basis of the record herein, plaintiff has failed to sustain its burden. It was incumbent on plaintiff (1) to prove that the collector's classification was erroneous by showing that the studs under discussion are *not* articles designed to be worn on apparel or carried on or about or attached to the person as "incidental articles of mere personal comfort, convenience, or adornment," *Gallagher & Ascher et al.* v. *United States*, 6 Ct. Cust. Appls. 105, T. D. 35343, and *United States* v. *Horstmann Co.*, 14 Ct. Cust. Appls. 443, T. D. 42079, and (2) to show affirmatively that the studs are commonly or commercially known as jewelry.

Plaintiff's evidence falls far short of meeting the twofold burden. First of all, the sample (exhibit 3, *supra*)—concededly representative of all studs using the imported brass pins—coupled with the quoted definitions of the word "stud" supports the collector's classification. The statements by plaintiff's witness that studs are displayed in jewelry departments and in jewelry stores have little, if any, evidentiary value toward establishing that the studs are commonly ·or

commercially known as jewelry. The following excerpt from *United States* v. *Ignaz Strauss & Co., Inc.*, 37 C. C. P. A. (Customs) 48, C. A. D. 418, is pertinent:

Appellant properly contends that it is a matter of common knowledge of which the court may take judicial notice that many articles are displayed in jewelry shops and in the jewelry departments of department stores which do not fall within the common or commercial conception of jewelry. Reliance upon the merchandising medium through which articles may be sold is not always a proper criterion by which their classification may be established.

Counsel for plaintiff, in his brief, calls attention to the provision in paragraph 1510 of the Tariff Act of 1930 for "all collar and cuff buttons and studs composed wholly of bone, mother-of-pearl, ivory, vegetable ivory, or agate," and argues therefrom that:

* * * Had Congress intended studs such as Exhibit 3 to be dutiable under Paragraph 1527 (c) (2) it would have used the same phraseology to cover metal studs.

It should be emphasized that paragraph 1527 (c) (2) does not *eo nomine* provide for "collar, cuff, and dress buttons," as suggested in plaintiff's brief. ˙ The provision therein for "Articles * * * designed to be worn on apparel or carried on or about or attached to the person" is basically a generic classification that includes a wide variety of merchandise. "Collar, cuff, and dress buttons, * * * and like articles," as those words are used in paragraph 1527 (c) (2), are exemplars indicative of some of the articles covered by the paragraph. There is no relation, so far as the issue herein is concerned, between paragraph 1510 and paragraph 1527 (c) (2).

Plaintiff's brief cites several cases that are clearly distinguishable from this case. *United States* v. *Heinrich Herrmann & Weiss*, 30 C. C. P. A. (Customs) 47, C. A. D. 213; *United States* v. *Coro, Inc.*, 38 C. C. P. A. (Customs) 85, C. A. D. 444; *Gorman Anderson Corp. and Sintered Carbide Corp.* v. *United States*, 34 Cust. Ct. 35, C. D. 1674. Following is a brief reference to each of the cited cases.

In the *Heinrich Herrmann & Weiss* case, the merchandise was described as "ordinary link cuff buttons made of tan color pigskin leather. The button portions are joined by a short link of the same kind of leather. They are not decorated or embellished in any manner." The court held that the merchandise was not jewelry, as assessed, but was properly classifiable as manufactures of leather, as claimed. Neither the link cuff buttons there in question, nor the issue presented, was comparable with the metal studs here under discussion and the legal proposition involved.

The *Coro, Inc.*, case, *supra*, related to so-called silver connectors

that were used in making up necklaces or bracelets. The issue in that case was whether the merchandise was classifiable as parts of jewelry, as claimed, or materials, suitable for use in the manufacture of jewelry, as assessed. There is nothing about that case to influence a decision in this case.

In the *Gorman Anderson Corp. et al.* case, *supra*, the merchandise under consideration consisted of horseshoe studs that were fastened to horseshoes to prevent slipping. In applying the definition of the word "stud," the court adopted the meaning that "most aptly fits the subject merchandise." The class of merchandise involved therein was so far removed from the metal studs discussed herein, it is unnecessary to make further mention of the case. Suffice to say, it offers nothing favorable to plaintiff's position herein.

On the basis of the record before us, and for all of the reasons hereinabove set forth, we hold that plaintiff has failed to overcome the presumption of correctness attaching to the collector's classification of the brass pins in question under paragraph 1527 (c) (2), with an assessment of duty at 1 cent each and 50 per centum ad valorem.

The protest is overruled and the decision of the collector is affirmed. Judgment will be rendered accordingly.