**W & J SLOANE, INC.**

v.

**UNITED STATES.**

**C.D. 4636; Court Nos. 68/23087, etc.**

United States Customs Court.

Feb. 19, 1976.

Rode & Qualey, New York City (Michael S. O'Rourke and Peter Jay Baskin, New York City, of counsel), for plaintiff.

Rex E. Lee, Asst. Atty. Gen., Washington, D.C. (John N. Politis, New York City, trial atty.), for defendant.

RE, Judge:

The question presented in this case pertains to the proper classification, for customs duty purposes, of certain merchandise imported from Hong Kong between 1967 and 1969. The merchandise, consisting of hand carved wooden panels in configurations of four, six, eight and twelve panels of various heights and weights, is known as "Coromandel screens."

The Customs Service classified the merchandise under item 206.67 of the Tariff Schedules of the United States [TSUS], as modified by T.D. 68–9, as "[w]ood * * * screens," and imposed a duty at the rate of 40, 36 or 32 percent ad valorem, depending upon the date of entry.

Plaintiff contests that classification and claims that the merchandise is properly classifiable under item 207.00, TSUS, as modified by T.D. 68–9, as "[a]rticles not specially provided for, of wood," and that the duty rate should therefore have been only 16⅔, 15 or 13 percent ad valorem, depending upon the

date of entry. In essence, it is plaintiff's contention that, since the Coromandel screens are not used to "shield light, heat, or wind, or to effect privacy," they are not screens within the meaning of item 206.67 of the tariff schedules. Maintaining that they are not "screens," plaintiff, in its brief, refers to the merchandise as "Coromandel wall panels." It succinctly describes their use as follows:

"* * * Coromandel wall panels are highly decorative articles used to beautify and enrich the surroundings in which they are installed. In this respect, they resemble or take the place of paintings, wall hangings, or other non-utilitarian articles of admiration and contemplation and are used in the same manner as paintings, wall hangings, or other non-utilitarian articles of admiration and contemplation which enhance the esthetic appeal of any room."

It is axiomatic in the law to state that the legal conclusion is dictated by the facts of the particular case. The thought is expressed well by the latin maxim *ex facto jus oritur*. In customs classification cases it is equally fundamental to state that the proper classification of imported merchandise also depends upon the competing tariff provisions. In the case at bar, the pertinent provisions may be set forth as follows:

*Classified under:*

Schedule 2, part 1:

"Subpart E.—Miscellaneous Products of Wood

\* \* \* \* \* \*

Wood blinds, shutters, screens, and shades, all the foregoing, with or without their hardware:

\* \* \* \* \* \*

206.67 Other .................... \* \* \*"

*Claimed under:*

"Subpart F.—Articles Not Specially Provided For, of Wood

*Subpart F headnote:*

1. This subpart covers all products of wood which are not provided for elsewhere in the tariff schedules.

207.00 Articles not specially provided for, of wood ............. \* \* \*"

Simply stated, the question presented is whether the Coromandel screens have been correctly classified as wood screens under item 206.67, or whether they should have been classified as articles not specially provided for, of wood, under item 207.00.

■ Although elementary, it is pertinent to state that, in customs classification cases, plaintiff bears the dual burden of proving that the classification ascribed to the merchandise by the customs officials is wrong, and that the claimed classification is correct. The facts and the competing tariff provisions of the present case highlight the reason and purpose which impose this dual burden upon the plaintiff. Specifically, plaintiff will not succeed simply by showing that the uses of the Coromandel screens do not necessarily conform to the traditional or usual uses of screens. Rather, to prevail plaintiff must also prove that, in accordance with principles of customs law, its claimed classification is correct, i. e., it more specifically or more appropriately describes the merchandise.

Notwithstanding the excellence of its presentation, plaintiff, for a variety of reasons, could not and did not succeed in meeting this dual burden. Its claim must, therefore, fail.

■ It is basic in customs law that an *eo nomine* provision for an article, without limitation or contrary legislative intent, judicial decision, or administrative practice, includes all forms of the article. *Nootka Packing Co. et al. v. United States,* 22 C.C.P.A. 464, 470, T.D. 47464 (1935). The parties are in agreement that tariff item 206.67 for wood screens is an *eo nomine* provision. Clearly, therefore, if the Coromandel screens are indeed screens, within the legislative intendment of the provision for wood screens, they have been correctly classified, and plaintiff's protest must be overruled.

There was no evidence presented at the trial that the commercial meaning of "screens" was different from its common meaning. Therefore, it is only necessary to determine whether the imported merchandise consists of "screens" within the common meaning of that term. *Moscahlades Bros., Inc. v. United States,* 42 C.C.P.A. 78, 82, C.A.D. 575 (1954); *Nomura (America) Corp. v. United States,* C.D. 3820, 299 F.Supp. 535, 62 Cust.Ct. 524, 527 (1969), *aff'd,* C.A.D. 1007, 435 F.2d 1319, 58 C.C.P.A. 82 (1971).

The defendant, in support of its contention that the Coromandel screens are screens within the meaning of item 206.-67, has submitted lexicographic definitions found in *Webster's Third New International Dictionary of the English Language, Unabridged* (1963) at page 2040:

"screen 1: a device used as a protection from the heat of a fireplace or from drafts or as an ornamental piece: as a: a folding temporary partition consisting of hinged leaves usu. made of wood or metal framework covered with cloth, leather, or paper  *  *  *

"2a: a nonbearing partition that may be solid or pierced, is often ornamental, and is carried up to a height necessary for separation and protection."

It has also quoted extensively from the discussion of "screen" found in the *Encyclopaedia Britannica,* Volume 20, 14th edition, 1929. This treatment, under the heading of "Screens of China and Japan," deals specifically with "Coromandel screens," and is helpful in understanding the nature of the merchandise in issue.

More significant, however, are the following quotations from the 1948 *Summaries of Tariff Information,* and the 1968 *Summaries of Trade and Tariff Information:*

1948 *Summaries of Tariff Information,* Volume 4, page 80 (with reference to paragraph 411, Tariff Act of 1930):

"The products covered by this summary include woven roll shades, venetian blinds, 2–, 3–, or 4–section folding screens, *ornamental screens,* and various other types of utility and *ornamental* blinds, curtains, shades, and

screens. These are generally, made of wood, bamboo, straw, papier mâche, palm leaf, or compositions of wood." (Emphasis added.)

1968 *Summaries of Trade and Tariff Information,* Schedule 2, Volume 2, pages 85–87 (with reference to the provision for wood screens):

"The articles included here ordinarily are completely assembled wood shutters, blinds, shades, and screens, with or without their hardware. * *

\* \* \* \* \* \*

"Utility or *decorative* screens usually consist of rectangular wooden frames in sizes comparable to those of shutters. Each frame encloses a thin panel of wood, cloth, plastic, paper, or other material, which may be plainly finished or *highly decorated.* Each frame may have leg members or a supporting stand, and generally three or four frames of the same size are hinged together to make a complete screen. Such movable screens are used to separate, conceal, shelter, or protect room and porch areas.

\* \* \* \* \* \*

"The use of wood *decorative* screens has also been rising. Such screens, which have frames of wood, but may have panels of plastics or textile material, are increasingly used as *ornamental* screens and interior room dividers in modern homes." (Emphasis added.)

The quoted sources leave no doubt that the term "screens," includes screens that are "highly decorated," "decorative" and "ornamental"; i. e., decorative screens. As stated in the 1968 *Summaries,* screens may be either "utility or decorative."

■ It is often stated in customs classification cases that the controverted articles themselves are potent witnesses. Indeed, their careful examination may dictate a classification within a particular tariff provision. *United States v. The Halle Bros. Co.,* 20 C.C.P.A. 219, T.D. 45995 (1932); *Leaf Brands, Inc. v.*

*United States,* 70 Cust.Ct. 66, C.D. 4409 (1973). A viewing of the Coromandel screen exhibited during the trial, and a study of the various exhibits submitted by the parties, indicate that the Coromandel screens or Coromandel "wall panels" are *decorative screens.*

Several features may be stated for the conclusion that Coromandel screens are decorative screens. First, it is not disputed that they are decorative. Indeed, plaintiff has taken great pains to prove that a "Coromandel is not a simple screen," but is an artistic creation having artistic merit, and is "installed in rooms for decorative purposes." Second, Coromandel screens have legs so that they may stand or be affixed to the floor in accordion fashion. Third, they have design, decoration or decor on both sides, so that when used as a room divider, the decoration is present on both sides of the divided area. Fourth, the Coromandel screens are sufficiently large and tall to perform the functions of screens.

The fact that the Coromandel screens are "decorative" does not mean that they are not also functional. Plaintiff's exhibits illustrate the dual purpose or nature of the importations. Some of the pictures show Coromandel screens covering, in an accordion fashion, a corner of a dining room or bedroom. In addition to providing "emphasis" or a "focal point" they perform the utilitarian function of smoothing, rounding out, removing from view, or concealing an otherwise "bland" or vacant corner.

Additionally, the record is replete with testimony that the Coromandel screens are referred to as screens even by plaintiff's witnesses themselves. One witness testified that they would be screens except for their decor, and that Coromandel screens are distinguishable from screens only by their use. The testimony, in distinguishing screens by their "decor," is contradicted by the lexicographic and other sources cited which show that the term screens includes *decorative screens.*

■ On the facts and competing tariff provisions of the present case, the suc-

cessful blending of a utilitarian and decorative function in an imported article does not remove that article from the tariff category which describes it *eo nomine.* As stated in *Naumes Forwarding Service v. United States,* 55 Cust.Ct. 132, 137, C.D. 2562 (1965): "[t]he fact that it is decorative does not indicate it is not a screen."

Also pertinent to the case at bar is the following sentence from the *Naumes* case:

"While use may be of paramount importance in determining the identity of an article (*United States v. Quon Quon Company,* 46 C.C.P.A. 70, 73, C.A.D. 699), we do not think the weak use testimony here is sufficient to establish that these articles are not used as screens, *when other factors, such as their shape, construction, and resemblance to the well-known oriental folding screen, proclaim that they are.*" (Emphasis added.)

Although the use testimony in the present case may not be said to be "weak," there is no doubt that the Coromandel screens are "the well-known oriental folding screens" and proclaim what they are to all who view them.

Plaintiff's testimony at the trial concentrated on the use of the Coromandel screens. The emphasis upon use was obviously an attempt to bring the case within the reasoning of *Sanji Kobata et al. v. United States,* 66 Cust.Ct. 341, C.D. 4213, 326 F.Supp. 1397 (1971). In *Sanji Kobata* certain Japanese "byobu" screens had been classified as "wood screens" under item 206.67 of the tariff schedules. Plaintiffs therein claimed that they were properly classifiable under item 765.03 of the tariff schedules which provided for "[p]aintings * * * executed wholly by hand." The question presented was whether plaintiffs succeeded in establishing that the byobu *screens* were not screens, as classified, but rather *paintings,* as claimed. On the facts, and the competing tariff provisions, this court held that they were paintings for tariff purposes.

In *Sanji Kobata,* on the question of appearance of an article and its use, it was stated:

" * * * in the case at bar, although 'screens' might initially be a reasonable way to describe or refer to the articles in question, that designation commences to vanish as credible testimony is introduced showing a use that makes a different classification more appropriate. * * * " (Emphasis added.) 66 Cust.Ct. at 349.

The question to be answered is whether testimony as to use "makes a different classification more appropriate." Hence, the thrust of the reasoning of *Sanji Kobata* may be summarized by saying that the label that is placed upon imported merchandise, whether it be "byobu screen," or "Coromandel screen," does not foreclose further inquiry as to its proper classification for customs purposes. A careful examination of the byobu screens and their use in *Sanji Kobata* persuaded the court that they were *paintings* within the claimed tariff provision. This examination caused the court to observe that the screen was merely the surface, comparable to a canvas, upon which the artist painted the landscape or other picture. Indeed, the court noted that the finished artistic creation was embraced in the dictionary definition of a "painting" as a "decoration achieved by applying paint to a surface."

In addition to the testimony as to use, other factors warranted the classification of the byobu screens as "paintings." For example, it was clear that the byobu screens were designed to satisfy the demand in the United States for wall hangings. Unlike the Coromandel screens, only one side was decorated or adorned with the painting. Moreover, the byobu screens were smaller "and are not the larger size screens that are furniture and serve the function of screens." *Sanji Kobata et al. v. United States,* 66 Cust.Ct. at 353. Proof of use in *Sanji Kobata,* as confirmed by the physical characteristics of the byobu screens themselves, not only indicated

that they were not used as screens, but also proved that they were used as paintings. Proof of use was helpful in identifying the article in order to determine whether they were "screens," as classified, or more appropriately, "paintings," as claimed. The court in *Sanji Kobata* held that as between those two tariff provisions, "paintings" was more appropriate.

The *Sanji Kobata* case is clearly distinguishable from the case at bar. On the facts, the byobu screens of *Sanji Kobata* differed from the Coromandel screens presently before the court. At the trial of the case at bar, plaintiff brought into the courtroom a seven foot high, eight panel Coromandel screen, a photograph of which was admitted into evidence as plaintiff's illustrative exhibit 1. The byobu screens were considerably smaller, had no legs and contained no painting on the back. The byobu screens were merely the canvas that contained the oriental hand painting and were hung on walls precisely as paintings. More important, in *Sanji Kobata* the competing provisions were *wood screens*, under item 206.67 of the tariff schedules, and *paintings*, under item 765.03 of the schedules. A thorough examination of the byobu screens, the testimony as to use and the exhibits in that case, led to the conclusion that the articles were *paintings*, as claimed.

However obvious, perhaps it is well to repeat that in *Sanji Kobata* plaintiffs succeeded in showing that the merchandise was described in an existing tariff provision for "paintings." In the case at bar, plaintiff has emphasized the artistic nature of the Coromandel screens and, by the careful introduction of testimony as to use, attempted to show that they are creations, and works of art of wood. Unfortunately for plaintiff, it labored mightily to fit the imported merchandise into a customs classification that does not exist in the tariff schedules.

Plaintiff correctly points out that the "competing tariff provisions in this action both cover merchandise 'of wood'." It is in error, however, when it asserts that the Coromandel screens are "not provided for elsewhere in the tariff schedules."

Defendant concedes that item 207.00 of the tariff schedules describes the Coromandel screens, since, clearly, they are articles of wood. It points out, however, that item 207.00 is a general or "basket" provision for articles of wood. Item 206.67 of the tariff schedules is more specific, being an *eo nomine* provision for wood screens. Defendant, therefore, indicates the applicability of General Interpretative Rule 10(c) which provides that:

"an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it;
* * * "

Rule 10(c), in effect, codifies a rule of eminent good sense that if an imported article is described in two or more tariff provisions it is to be classified under the provision which describes it most specifically.

This rule of relative specificity, as it is known in customs law, is applicable to the case at bar since the Coromandel screens are more specifically provided for under the tariff provision for wood screens. As stated by the Supreme Court: " * * * the designation of an article, *eo nomine,* * * * must prevail over words of a general description which might otherwise include the article specially designated." *Chew Hing Lung v. Wise,* 176 U.S. 156, 160, 20 S.Ct. 320, 322, 44 L.Ed. 412, 414 (1900). See also *Arthur v. Lahey,* 96 U.S. 112, 24 L.Ed. 766 (1878); *United States v. Astra Trading Corp.,* 44 C.C.P.A. 8, 11, C.A.D. 627 (1956); *Atalanta Trading Corp. v. United States,* 42 C.C.P.A. 90, 94, C.A.D. 577 (1954); *United States v. Hatters' Fur Exchange,* 1 Ct.Cust.Appls. 198, T.D. 31237 (1911).

It is the determination of the court that the Coromandel screens were properly classified under item 206.67 of the tariff schedules, the *eo nomine* provision for wood screens. Their decorative or artistic features do not change their fun-

damental nature as screens within the *eo nomine* provision which embraces all forms of the article.

In view of the foregoing, the tariff classification of the imported merchandise by the customs officials is sustained, and the protests are hereby overruled.

Judgment will issue accordingly.