S.I. Stud, Inc., plaintiff *v.* United States, defendant

Court No. 90–12–00653

(Decided July 1, 1993)

*Soller, Shayne & Horn (Carl R. Soller, Margaret H. Sachter)* for plaintiff.
*Stuart E. Schiffer*, Acting Assistant Attorney General; *Joseph I. Liebman*, Attorney in Charge, International Trade Field Office (*James A. Curley*); of counsel: *Karen P. Binder*, Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs Service for defendant.

## Memorandum Opinion

Musgrave, *Judge:* This case concerns the classification of steel fasteners imported from Japan. The fasteners were manufactured by Sanwa Iron Works, Ltd. and imported by its wholly owned subsidiary, S.I. Stud, Inc., the plaintiff ("importer" or "S.I. Stud"). The imported fasteners in this case were entered between October 1987 and December 1989. Merchandise entered before January 1, 1989 is governed by the Tariff Schedules of the United States ("TSUS"). Merchandise entered on or after January 1, 1989 is governed by the Harmonized Tariff Schedules of the United States ("HTSUS").

The imported fasteners have been classified by the Customs Service as studs under item 646.57, TSUS, or heading 7318.15.20, HTSUS, with one exception. The Customs Service had classified the fully threaded rods, which are long steel rods measuring about 12 feet in length and threaded their entire length, as "articles of * * * iron or steel * * * other * * * other * * * other" under item 657.25, TSUS, or as "threaded articles * * * other" under heading 7318.19.00, HTSUS. The Customs Service is now of the view that they are more specifically described as unfinished studs under item 646.57, TSUS, or heading 7318.15.50, HTSUS.[1] The importer claims that the imported fasteners should be classified as bolts under item 646.54, TSUS, or heading 7318.15.20, HTSUS.

The competing items from the tariff schedules provide as follows:

Bolts, nuts, studs and studding, screws, and washers (including bolts and their nuts imported in the same shipment, and assembled bolts or screws and washers, with or without nuts); screw eyes,

---

[1] Since Customs has changed the classification of the unfinished rods, the Customs Service has forfeited the presumption of correctness of its classification of that item. However, the parties are in agreement that under the principles enunciated in *Doherty-Barrow of Texas, Inc. v. United States*, 3 CIT 228 (1982), these threaded rods are classifiable under the provision applicable to the finished product made from them, the stud bolts here at issue. The presumption of correctness will in fact apply to the finished product.

screw hooks and screw rings; turnbuckles; all the foregoing not described in the foregoing provisions of this subpart, of base metal:

Of iron or steel:

| | | |
|---|---|---|
| 646.54 | Bolts and bolts and their nuts imported in the same shipment .............. | 0.7% *ad val.* |
| 646.57 | Studs and studding ................. | 4.7% *ad val.* |

    *        *        *        *        *        *        *

Articles of iron or steel, not coated or plated with precious metal:

    *        *        *        *        *        *        *

Other articles:
    Other:

| | | |
|---|---|---|
| 657.25 | Other: ........................... | 5.7% *ad val.* |

The competing headings from the harmonized tariff schedule provide as follows:

Other screws and bolts, whether or not with their nuts or washers:

| | | |
|---|---|---|
| 7318.15.20 | Bolts and bolts and their nuts or washers entered or exported in the same shipment .................... | 0.7% *ad val.* |
| 7318.15.50 | Studs ........................... | 4.7% *ad val.* |
| 7318.19.00 | Other ........................... | 5.7% *ad val.* |

The parties have agreed to several facts, among them that the imported A325 and A490 fasteners, having hexagonal shaped heads, whether imported with or without nuts, are classifiable as bolts under item 646.54, TSUS. See *Pretrial Order, Sched. E–1 at 10.* The parties agree on the identity of the fasteners at issue here and the way in which they are used in the principal industry. The parties agree that the merchandise is an alloy steel continuous-thread headless fastener, with chamfered ends. Furthermore, the items are graded fasteners, used with two nuts each, and manufactured in accordance with standards that identify them for use under conditions of extreme stress and temperature. The stud bolt is employed by passing it through untapped holes in two flanges and securing it with a nut at each end. *Pretrial Order Sch. C., par. 15, 16.*

This case was tried before the Court on July 8, 1992. Each party called two witnesses. Mr. Kei Miyashita, president and general manager of the importer, and vice president of Sanwa Iron Works, testified for the importer. He described the imported fasteners at issue as measuring between 0.5 to 2.5 inches in diameter and 2 to 30 inches in length They are used primarily in the petroleum and petrochemical industries to fasten together pipe flanges. In addition, Mr. Miyashita testified that the importer's customers cut the imported full thread rod into short sections to make studs. During his testimony, defendant demonstrated how Sanwa's invoices and other business brochures refer to the fasteners as full threaded stud. *Defendant's Exhs. JJ & HH.*

The importer also called Mr. Thomas W. Cameron, its national sales manager. He is a member of various industry standards committees and has worked in the "stud industry" since 1960. He described the properties of the fasteners and also testified that they are known in the industry as "studs, all thread studs, all thread stud bolts, and continuous thread studs." At no time did any witness testify that when the unfinished rod is cut up, the small sections are called bolts. Plaintiff's witnesses did concede that when customers order these fasteners they request all thread stud and not bolts.[2]

The government called Mr. William E. Windt, vice president of Texas Bolt Company, a domestic manufacturer of studs, nuts and bolts. He is a member of the American Society for Testing Materials ("ASTM"). Mr. Windt testified, *inter alia,* that the imported fasteners shown in *Plaintiff's Exhibit* 1A, B and C, and *Defendant's Exhibit* NN and OO are known, bought and sold in the fastener trade as A193 grade B7 all thread studs, and are not known, bought or sold in the trade as bolts.

Dr. George D. Bibel, an assistant professor of mechanical engineering at the University of Akron and a registered professional engineer, testified as an expert for the government. Dr. Bibel is an independent consultant who has a long history of experience in the relevant field, including membership on various committees of the American Society of Mechanical Engineers ("ASME"). He testified that the fasteners are known as studs and that he has ordered the fasteners for his research work from suppliers as "ASTM 193 B7 Studs." *Bibel Transcript* at 71, 86.

The parties introduced definitions and illustrations of studs and bolts given in industry standards, technical handbooks, glossaries, dictionaries, and encyclopedias. After an examination of this evidence, as well as the testimony of the witnesses and the relevant tariff schedules, the Court finds that plaintiff did not overcome the presumption of correctness in the Customs Service's assessment of the continuously threaded headless rod as a stud rather than a bolt.

The Customs Service's classification is presumed correct, and the importer bears the burden of proving that decision was incorrect.[3] 28 U.S.C. § 2639 (a)(1) (1992); *Stewart-Warner Corp. v. United States,* 3 Fed. Cir. (T) 20, 22, 748 F.2d 663, 665 & n.6 (Fed. Cir. 1984); *Jarvis Clark Co. v. United States,* 2 Fed. Cir. (T) 70, 75, 733 F.2d 873 (1984). *reh'g denied,* 2 Fed. Cir. (T) 97, 739 F.2d 628 (1984). The presumption applies not only to Customs' ultimate classification decision, but also to every subsidiary fact necessary to support that decision. *United States v. New York Merchandise Co.,* 58 CCPA 53, C.A.D. 1004, 435 F.2d 1315 (1970).

---

[2] Plaintiff argues that Customs is bootstrapping its argument because Customs itself instructed plaintiff's companies how to refer to the fasteners on their business forms. While this argument has some merit, the Court finds that upon review of all the testimony and documentation, "all thread stud" is widely used and understood to refer to these fasteners in this industry independent of the governments characterizations.

[3] *See supra, note 1.*

Moreover, in determining whether the presumption of correctness has been rebutted, the Court must consider whether the government's classification is correct, both independently and in comparison with the importer's alternative. Oak Laminates Div. of *Oak Materials Group v. United States,* 8 CIT 175 (1984), 628 F. Supp. 1577, aff'd 783 F.2d 195; *Cosmos Int'l v. United States,* 15 CIT 137, 760 F. Supp. 914 (1991).

Although the government did not rest upon the presumption of correctness at trial, it did argue it its brief that the presumption had not been refuted by the evidence or testimony at trial.

The meaning of a tariff term is a question of law. *Pfaff American Sales Corp. v. United States,* 17 CIT 550, 553, Slip Op. 93–101 at 8 (June 9, 1993), *citing Digital Equip. Corp. v. United States,* 8 Fed. Cir. (T) 5, 6, 889 F.2d 267, 268 (1989). The determination of whether a particular item fits within that meaning is question of fact. *E.M. Chemicals v. United States,* 9 Fed. Cir (T) 33, 920 F.2d 910 (Fed. Cir. 1990). The tariff terms "stud" and "bolt" are not defined in the TSUS or the HTSUS and there is little in the legislative history or prior judicial interpretation that further defines or distinguishes them.[4] When a tariff term is not defined in either the tariff schedules or the accompanying legislative history, the correct meaning of a term in the tariff provision is the common meaning understood in trade or commerce. *Pfaff American Sales Corp. at 8, citing Schott Optical Glass, Inc. v. United States,* 67 CCPA 32, C.A.D. 1239, 612 F.2d 1283 (1979). Likewise, since the meaning of a customs term is a question of law, a court may rely upon its own understanding of terms used, and may consult standard lexicographic and scientific authorities, to determine their common meaning. *Pfaff American Sales Corp.* at 8, *citing Trans-Atlantic Co. v. United States,* 60 CCPA 100, C.A.D. 1088, 471 F.2d 1397 (1973).

As discussed above, the headless fasteners at issue were known by several names in the industry, including "stud" and "stud bolt." Yet no witness, most notably plaintiff's, would admit, concede or aver that these fasteners were called "bolts" or generally known as "bolts."[5]

This evidence, when considered along with persuasive dictionary definitions of bolts and studs, supports the government's classification. The McGraw-Hill Dictionary of Scientific and Technical Terms has been relied upon by both parties. The fourth edition of the *McGraw-Hill Dictionary* contains the following definition of "bolt" for the purposes of design engineering: "a rod, usually of metal, with a square, round, or hexagonal head at one end and a screw thread on the other, used to fasten objects together." *McGraw-Hill Dictionary of Scientific and Technical Terms,* 237 (4th ed. 1989). The definition contains both a

---

[4] The Court has considered the parties' discussion of such sources as the *Summaries of Tariff Information* and *Fastener Standards* (1959 & 1988) and does not find them to be very helpful or conclusive.

[5] Dr. Bibel had, in an earlier technical publication regarding pipe flanges and thermodynamics, referred to certain headless petrochemical fasteners as "bolts." *See Plaintiff's Exhibit 11.* Dr. Bibel, on direct examination, replied in defense that he had used the term "bolt" generically and that had the term not inferred "stud-bolt," the paper would have had no value to the industry. According to Bibel, "bolt" in that context was an informal term that could apply to any type of fastener; a bolt, a stud, or a screw. Dr. Bibel testified that many glossaries use continuous thread stud, stud, and stud bolt interchangeably. *Bibel Transcript* at 75. Some industries even refer to the fasteners as bolt studs. *Id.*

configurational element (a rod with a head on one end and a screw on the other) and a functional element (used to fasten objects together). The Court notes that in the general purpose dictionaries a head was not an absolute requirement of the definition of a bolt, though it was often present. *See e.g. Webster's Third New International Dictionary (1966).*

The same technical dictionary's design engineering definition of "Stud" provides as follows: "1. A rivet boss, or nail with a large, ornamental head. 2. A short rod or bolt threaded at both ends without a head." *Id.* at 1843. Dr. Bibel concluded from these definitions that the shape or configuration of the fastener determined whether it was a stud or a bolt. *See Bibel Trial Transcript at 74.* Even if other factors such as application or function must be considered the Customs classification based on configuration of the headless fasteners at issue as studs ("studs or bolts" without heads) is more precise than plaintiff's proposed classification as bolts (headed at one end with a screw thread at the other).

Plaintiff argues for a broad functional, rather than configurational, definition of "bolt" and a narrow tariff definition of "stud." Furthermore, plaintiff urges that the Court not place any weight on the technical sources but instead derive the meaning of "bolt" and "stud," as intended by the drafters of the tariff schedules, from traditional sources of the common meaning of those terms, *i.e.,* Webster's Dictionary.

Plaintiff concedes that the term "stud" is widely used for its product as short for "stud bolt," but argues that such trade vernacular does not determine the classification of this fastener, nor does its headless configuration. Plaintiff asserts that the industry usage of "stud" does not carry the connotation intended for the tariff term "stud" at the time of the enactment of either the tariff Schedules or the Harmonized Tariff system.

If that industry usage had been contemplated, the above referenced McGraw-Hill dictionary definitions as well as others in technical dictionaries offers strong support for the government's position. According to McGraw-Hill, one principle definition of a stud is as a specific bolt, threaded at both ends without a head. *See McGraw-Hill Dictionary of Scientific and Technical Terms,* 1843 (4th ed. 1989). McGraw-Hill takes a similar *configurational* approach to defining "bolt," specifying that it has a head at one end and a screw thread at the other. *Id.* at 237. McGraw-Hill explains that the function of the "bolt" is to fasten things together. *See id.*

McGraw-Hill provides no explanation for the function of "studs." However, the Court notes that McGraw-Hill explicitly allows in its definition of a "stud" that it is a special form of a "rod" or "bolt." *See id.* at 1843. Therefore, the Court infers, with reference back to the definition of "bolt" itself, that a "stud" performs a similar, if not more specific, function. Moreover, the definition of "stud" itself, as a rod or bolt threaded at both ends, strongly suggests that it is used to fasten things together.

There is, however, one significant mechanical or functional difference between the "stud" and the "bolt" as McGraw-Hill has described them. This difference stems from the consequences of configuration. There is a tremendous difference in the securing strength obtainable from the two fasteners. The "stud" with no heads, only nuts at both ends, can be tightened to deliver tremendous clamping force due to the absence of torsional or twisting stress in the threaded rod. *See Bibel Transcript 77–78.* This advantage is lost when a bolt with a head is employed. This functional approach supports the Customs classification, even though the defendant asserts that it is not obligated to do a functional analysis. There are real functional and configurational differences between bolts and studs, forming a basis for distinguishing them. Defendant contends, therefore, that since bolts and studs are provided for separately in the tariff schedules, and since the stud is a more specific form of fastener even under general purpose dictionary definitions, Customs acted properly in classifying them differently. The only question that remains is whether these fasteners, predominantly known as studs in the industry are actually more akin to what the drafters of the tariff schedules meant as bolts.

To summarize, several important factors bolster the Customs Service's classification. First, the tariff schedules themselves provide separately for bolts and studs (as opposed to one or the other and a basket provision). Second, the McGraw-Hill technical lexicon provides separate definitions of bolts and studs. Its definition for a stud states that it may be a specific form of a bolt and the description in the definition of a headless threaded rod closely fits the description of the merchandise at issue in this case. Finally, plaintiff's own witnesses declined to testify at trial that the merchandise is referred to or sold as a "bolt." The Court is satisfied after review of the testimonial evidence, as well as technical standards manuals, and sale brochures that the common and commercial meaning of "stud" includes the fasteners subject to this inquiry.

Plaintiff's principal argument is that the common meaning of the tariff term "stud" is that of a "fixed protuberance." Consequently, according to plaintiff, this headless fastener that is slid between two untapped holes and secured with nuts at each end cannot fall within the common meaning of the tariff term. *Plaintiff's Brief at 8.*

The common meaning and the commercial meaning of a statutory provision is presumptively the same in the absence of convincing proof or other circumstances to the contrary. *Gorman Anderson Corp. v. United States,* 34 Cust. Ct. 35, 37, C.D. 1674 (1955) ("Gorman"). Both parties cite the original tariff provision, paragraph 332 of the Tariff Act of 1930 as evidence of the correctness of their classification. It provides for "rivets, studs, steel points, lathed, machined or brightened, and rivets or studs for nonskidding automobile tires," and was described as *eo nomine* in *Gorman. See id.* at 37. Where a tariff provision describes the article to be classified by a specific name, usually one well known in commerce, the provision is considered to be *eo nomine. See United States v.*

*Bruckman,* 65 CCPA 90, 94, n.8, C.A.D. 1211, 582 F.2d 622, 625 n.8 (1978).

Plaintiff interprets *Gorman* very narrowly to stand for the proposition that the definition of "studs" for classification extended beyond ornamental knobs, nailheads, or other such decorative protuberances, to non-slip points for horseshoes (at issue in that case) as well as other utilitarian articles such as tire studs and hobnails. *Plaintiff's Brief at 9.* Plaintiff argues, however, that the scope of the tariff meaning of "stud" was not extended by *Gorman* beyond these examples of fixed protuberances.

Plaintiff relies on another case in which the Court found that steel rods or pins driven into masonry or concrete, with a threaded portion protruding, so that an extension could be attached with a coupling, were studs. *See Fastening Devices, Inc. v. United States,* 40 Cust. Ct. 345, C.D. 2004 (1958) (relying on Gorman). Plaintiff opines that the Court in *Fastening Devices* found the fact that the studs "protruded from the surface in which they were fixed" was the determining characteristic that brought them within the common meaning of the *eo nomine* provision for studs in the tariff. *Plaintiff's Brief at 11* (characterization by plaintiff—no cite to *Fastening Devices*). Plaintiff urged further that "the fact that protruding threaded portions of the studs would then serve with couplings to attach other articles was not the criterion, nor was the configuration of the studs." *Id.* Plaintiff even suggests that the fastener could have been construed as an "embedded bolt." *Id.*

The Court notes plaintiff's admirable efforts to construe the fastener in this case as a bolt. However, the Court finds that while the fastener has certain qualities similar to that of a bolt, it is more appropriately classified as a stud. The Court in *Gorman* reviewed several definitions of stud, among them:

Knight's American Mechanical Dictionary (1876):

> **Stud.**  1.  *(machinery.)* A boss or protuberance designed to hold an attached object in place.
>
>   *   *   *   *   *   *   *
>
> 4.  A nail with a large head
>
> 5.  *(Nautical.)* A cast-iron brace across the minor diameter of a cable link, to prevent collapse.

Chambers Technical Dictionary (1953):

> *   *   *   *   *   *   *
>
> **Stud.**  *(Eng.)* A shank, or headless bolt, generally screwed from both ends and plain in the middle. It is permanently screwed into one piece, to which another is then secured by a nut.
>
> *   *   *   *   *   *   *

Funk & Wagnall's New Standard Dictionary of the English Language (1942):

> **Stud,** *n.* 1. * * * 2. A knob, round-headed nail, or other object forming a small protuberant ornament. (1) An ornamental button worn

in a shirt-front or cuff. (2) a round-top nut for a stud-bolt. (3) * * * (4) A Hobnail.

Webster's New International Dictionary (1948):

> **Stud.,** *n.* * * * 1. * * * 2. A projecting knob, rod, pin, or the like; esp., a kind of nail with a large head, used chiefly for ornament; * * * 3. A detachable buttonlike device, made in various forms, to be inserted through one or more buttonholes or eyelets and serve as a fastener, for ornament, etc.

*Gorman,* at 38–39. The Gorman Court concluded that the horseshoe stud, while not specifically provided for, was close enough to a hobnail that it fit with the multifaceted definition of "stud." In other words, the horseshoe stud was merely another form of the *eo nomine* tariff term "stud." The Court held that "in view of the broad application of the definitions of the noun "stud" to articles of wood, as well as of metal having multifarious uses, we are impelled to adopt the definition of the term "stud" which most aptly fits the subject merchandise." *Id.* at 40. Likewise, whereas advances in technology and application are inevitable, the fasteners here remain more appropriately associated with the tariff term "stud" than with the term "bolt."

The parties have supplied further more recent dictionary definitions in support of their contentions regarding the original meaning of the tariff terms "bolt" and "stud." Plaintiff offers the following:

Webster's New International Dictionary (2d ed. 1950):

> bolt (bolt), *n.* * * * 5. A pin or rod, esp. of steel, to fasten or hold something in place, often having a head at one end and a screw thread cut upon the other end.
>
> Bolts are given various names according to: (1) the general shape of the head, as square-head, slotted, T-eye, ring, etc. (2) the mode of securing, as expansion, tap, fox, key, etc. (3) the use or application, as carriage, coupling, elevator, hanger, track, **stud,** stove, etc. * * * (emphasis supplied by plaintiff).

Webster's Third New International Dictionary (1966):

> "bolt", *n.* * * * 6: a rod or heavy pin (as one made of steel) designed to fasten two or more objects (as metal plates) together or to hold one or more objects in place, often having a head at one end and a screw thread cut upon the other end and being usu. secured by a nut or by riveting.

Funk & Wagnall's New Standard Dictionary of the English Language (1952):

> bolt, *n.* * * * 2. A pin or rod used for holding anything in its place, and often having a permanent head at one end.
>
> * * * * * * *
>
> Various bolts are named (1) from their use; as bridge-bolt (a rivet), fender-b., holding-down b., stove-b., tire-bolt, etc.; (2) from their construction, as <u>double-ended bolt</u> (having threads at both ends), double-headed b., eye-b., (having an eye) fang-b. (having pro-

jections or teeth to prevent its moving while the nut is being screwed up), hook-b., round-headed-b., screw-b.; (3) from their method of adjustment, as dormant-b. (concealed in a mortise and operated by a key or knob), flush-b. (emphasis supplied by plaintiff).

Defendant points out that the very general purpose dictionaries upon which plaintiff relies to define a stud as a "bolt" include "stud-bolt" as an example of a "stud." Defendant's citations include the following:

Webster's Third New International Dictionary (1961):

Stud * * * 4: any of various infixed pieces (as a rod or pin) projecting from a machine and serving chiefly as a support or axis: as **a:** a short live spindle or mandrel (as in the change gear for a screw cutting lather) **b:** stud-bolt **c:** a metal piece in a timepiece * * *.

At the very least, at the time of the enactment of the tariff schedules, the general purpose dictionaries teach that there is some overlap between their definitions of bolts and studs. Both bolt and stud are broad terms, with dozens of permutations of form and application. It is for this reason that the Court places greater emphasis on the preponderance of technical sources which define "stud" as a headless threaded rod.[6] For example, defendant provided the following definitions from technical sources:

Stud—a threaded fastener without a head, with threads on one end or both ends, or threaded full length (*ASME Boiler and Pressure Vessal Code,* An American National Standard sponsored by the American Society of Mechanical Engineers) *Defendant's Exh. F, p.608;*

Stud: A stud is a cylindrical rod of moderate length, threaded on either one or both ends or throughout its entire length (American Standard Glossary of Terms for Mechanical Fasteners, ASA B18.12 –1962, published by The American Society of Mechanical Engineers (1962) *Defendant's Exh. K, § 4.1, p. 41*);

Continuous Thread Stud: This stud is threaded for its entire length with conventional threads for the assembly of nuts on both ends. It is a variation of the 4.5.1. Double End Stud (clamping type). It is also known in some industries as "bolt-studs." (American Standard Glossary of Terms for Mechanical Fasteners, ASA B18.12 1962, published by the American Society of Mechanical Engineers (1962). *Defendant's Exh. K, § 4.4, p. 42*); and finally the McGraw-Hill definition discussed above:

Stud * * * 2. A short rod or bolt threaded at both ends without a head. McGraw-Hill Dictionary of Scientific and Technical Terms (3rd. ed. 1984). *Defendant's Exh. L, p. 1571.*

Defendant notes that the ASME Glossary was published "before or at least contemporaneously with, the enactment of the TSUS in 1962." *De-*

---

[6] As defendant points out, in technical fields the courts usually place greater reliance on technical publications that define the item more specifically to the actual circumstances of its use than on general purpose dictionaries in reaching a decision. *See e.g., Brown Boveri Corp. v. United States,* 53 CCPA 19,23, C.A.D. 870 (1966) (switchgear); *United States v. Spiegel Bros. Corp.,* 51 CCPA 69, 73, C.A.D. 839 (1964) (pliers).

*fendant's Brief at 11 n.4.* This Court (formerly the Customs Court) has relied on the ASME Glossary as an "authoritative technical source" in finding that an imported fastener was a rivet. *See Defendant's Brief at 11,* citing *Avdel Corp. v. United States,* 73 Cust. Ct. 200, 204, C.D. 4575 (1974). Indeed plaintiff has relied on the ASME as well in this case. *Plaintiff's Brief at 3, 22.*

Defendant offers further evidence of the pervasive industry understanding that a stud bolt is a stud rather than a bolt by demonstrating the consistent usage in the less technical, more popular scientific literature:

> The name "stud bolt" is often applied to a stud as a through fastener with a nut on each end. Although studs are not standardized, they can be made from ready-made threaded rods or cut with a die.

Robert Scharff, *How to Fasten Anything* 51 (1980).

Defendant concludes from the foregoing definitions that:

> Inasmuch as the imported fastener is a cylindrical rod threaded end to end without a head and, when used, is first assembled with nuts on both ends, it plainly satisfies the definitions of a stud set forth above. Moreover, the imported fasteners are identical to a continuous thread stud, which is defined in the American Standard Glossary of Terms for Mechanical Fasteners [ ] and is shown in a drawing of that term on page 42 of [Defendant's Exh. K].

*Defendant's Brief at 11.*

Plaintiff, in an effort to establish that the common meaning of the tariff terms controls, recalls this Court's holding that "[i]t is well established that where the scientific meaning of a tariff term differs from the term's common or commercial meaning, the term is not to be construed according to the scientific meaning, absent a contrary intent by Congress in using the term." *Alexandria International, Inc. v. United States,* 13 CIT 689, 692 (1989). However, as discussed above, the nomenclature in the older and general purpose dictionaries is not consistent, either to the "common" or "commercial" meaning of the terms "bolt" and "stud." It is therefore necessary in this case to consult the "scientific" sources if the Court is to assess the accuracy of the present classification, while preserving any relation to how the fasteners are actually referred to or used.

Finally, defendant asserts that even if the Court finds that the fastener is also a bolt, it must be classified as a stud because the tariff provisions for studs are more specific than those for bolts and carry a higher rate of duty. The Court recognizes the long standing principle that when an article is described in two or more tariff provisions, it should be classified under the provision which describes it most specifically. *A.N. Deringer, Inc. v. United States,* 10 CIT 577, 580 (1986), *citing W. & J. Sloane, Inc. v. United States,* 76 Cust. Ct. 62, 69, C.D. 4636, 408 F. Supp. 1392, 1397 (1976). In this case, the provision which most specifically describes the imported merchandise is item 646.57, TSUS, and 7318.15.50 HTSUS, referring to "studs." Moreover, the designation of an article, eo

nomine, must prevail over words of a general description which might otherwise include the article specially designated. *W. & J. Sloane, Inc. v. United States,* 76 Cust. Ct. 62, 69, C.D. 4636, 408 F. Supp. 1392, 1397 (1976), *Citing Chew Hing Lung v. Wise,* 176 U.S. 156, 160, 20 S.Ct. 320, 322, 44 L.Ed. 412, 414 (1900).

*Jarvis Clarke* teaches that "[t]he importer * * * has the burden of establishing that the government's classification is wrong. Ordinarily, it will be difficult to meet this burden of proof without proposing a better classification." 733 F.2d at 878. Here, plaintiff at best has made a colorable argument that the fasteners in this case could have been classified as "bolts." Plaintiff, however, has not met its burden of proving that the government was *incorrect* in classifying the fasteners as "studs."

In conclusion, the Court is satisfied that defendant's classification of the fasteners in this case as studs under item 646.57, TSUS, or heading 7318.15.50, HTSUS, was correct. The evidence and testimony presented at trial, as well as the lexicographic sources and previous judicial guidance compel the conclusion that the tariff term "stud" is not as limited as plaintiff believes. Moreover, while the fastener at issue does have some characteristics of a bolt, it is plainly defined, known, bought and sold, and referred to in the industry as a "stud" or a "stud-bolt," and only in isolated instances as a "bolt-stud." The fastener is even more rarely referred to as a "bolt," according to the witnesses at trial, including the employees of plaintiff S.I. Stud.

The Customs Service is entitled to the benefit of the usual presumption of correctness. The evidence in this case, when carefully weighed, lends considerably more support to the collector than to plaintiff. Therefore, plaintiff has not overcome the presumption of correctness in Customs classification; nor has it presented a more suitable alternative. Likewise, since the Customs classification of the finished product determines the classification of the unfinished rod, the Customs classification of the latter was also correct. Accordingly, judgment shall be entered for defendant and the action is hereby dismissed.