**ROLLERBLADE, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Slip Op. 96–18.**
**Court No. 91–12–00891.**

United States Court of International Trade.

Jan. 17, 1996.

Decision Amending Judgment
Feb. 26, 1996.

Powell, Goldstein, Frazer & Murphy, Washington, DC (Richard M. Belanger, Robert Torresen, Jr., D. Christine Wood), counsel, for Plaintiff.

Frank W. Hunger, Assistant Attorney General, Washington, DC; Joseph I. Liebman, Attorney in Charge, International Trade Field Office; Bruce N. Stratvert, New York City, Civil Division, Dept. of Justice, Commercial Litigation Branch; Mark G. Nackman, Office of Assistant Chief Counsel, U.S. Customs Service, of counsel, for Defendant.

## *OPINION*

POGUE, Judge.

Invoking this Court's jurisdiction under 28 U.S.C. § 1581(a) (1988), Plaintiff challenges Customs' classification of certain merchandise imported from August 3, 1988 to November 27, 1990 and described as in-line roller skate boots. The Court has jurisdiction over all but one of Plaintiff's twenty-three protests, and, for the following reasons, enters summary judgment for Plaintiff.

### BACKGROUND

Prior to January 1, 1989, U.S. Customs classified imported merchandise using the Tariff Schedules of the United States ("TSUS"). Customs classified the merchandise imported by the Plaintiff prior to January 1, 1989 as "other athletic footwear" under item 700.5610, TSUS.[1] As of January 1, 1989, Customs began to utilize the Harmonized Tariff Schedules of the United States

---

1.
700.5610    Athletic footwear:

The rate of duty for this classification is 6 percent *ad valorem.*

("HTSUS") in classifying merchandise. Customs classified the merchandise imported by Plaintiff after January 1, 1989 as "other footwear" under subheading 6402.19.10, HTSUS.[2]

Plaintiff claims that the proper classification for the merchandise entered prior to January 1, 1989 is under item 734.90, TSUS, which covers "roller skates and parts thereof." [3] For the merchandise entered on or after January 1, 1989, Plaintiff claims that the proper classification is "roller skates and parts and accessories thereof" under subheading 9506.70.20, HTSUS.[4]

Both parties contend that there is no genuine issue of material fact, and move for summary judgment pursuant to USCIT R. 56.

## JURISDICTION

Defendant does not challenge this Court's jurisdiction over twenty-two of the Plaintiff's twenty-three protests. In its answer, however, Defendant avers that one of Plaintiff's twenty-three protests, no. 3501–9–000058, was untimely filed.

■ Protest no. 3501–9–000058 was filed on June 23, 1989 against the liquidation of

September 2, 1988. The statute requires that a protest be filed within ninety days after notice of liquidation. Section 514(c)(3) of the Tariff Act of 1930, 19 U.S.C. § 1514(c)(3) (1994). Protests not filed within the ninety-day statutory period are untimely, and consequently, the Court *sua sponte* dismisses the civil action based on protest no. 3501–9–000058 (and the covered entries) for lack of jurisdiction. *See Schering Corp. v. United States*, 67 C.C.P.A. 83, 86–88, C.A.D. 1250, 626 F.2d 162 (1980); *Group Italglass U.S.A., Inc. v. United States*, 839 F.Supp. 868, 17 CIT 1205, 1206 (1993).[5]

The Court, however, maintains jurisdiction over Plaintiff's action as to the other protests.

## UNDISPUTED FACTS

The merchandise consists of rigid, molded plastic (polyurethane) boots which include a removable, padded vinyl liner. The bottom portion of each boot is molded to accommodate the permanent attachment of wheel frames and wheels.[6]

The merchandise is not, however, imported with wheel frames or wheels. Rather, after the boots are imported, wheel frames and

---

2.

| 6402 | Other footwear with outer soles and uppers of rubber or plastics: |
| 6402.11.00 | Sports footwear: |
| 6402.19 | Other: |
| 6402.19.10 | Having uppers of which over 90 percent of the external surface area ... is rubber or plastics ... |

The rate of duty for this classification is 6 percent *ad valorem*.

For most of the entries made on or after Jan. 1, 1989, the Customs Service classified the merchandise as "waterproof footwear" under item 6401.99.80, HTSUS. The rate of duty for this classification is 6 percent *ad valorem*.

Customs concedes that this classification is not appropriate, but argues that no reliquidation is required as the appropriate classification, 6402.19.10, carries the same duty. (Defendant's Memorandum at 11, note 5.)

3.

| 734.9000 | Skates (including footwear with skates permanently attached), and parts thereof: |
| | Roller skates, and parts thereof |

Merchandise classified under this provision is free of duty.

4.

| 9506.70.20 | Roller skates and parts and accessories thereof |

Merchandise classified under this provision is free of duty.

5. When jurisdiction is challenged, Plaintiff has the burden of establishing it. *Hambro Automotive Corp. v. United States*, 66 C.C.P.A. 113, 117, C.A.D. 1231, 603 F.2d 850, 853 (1979) (citations omitted). Plaintiff has not brought to the attention of this Court any legal or factual reason to establish jurisdiction.

6. *Compare* Plaintiff's Statement of Material Facts at 3, ¶ 7 ("The merchandise ... consists of rigid, molded plastic (polyurethane) shell cuff assemblies which include a removable, padded vinyl liner. The bottom portion of each shell is molded to Rollerblade's specifications to accommodate the permanent attachment of wheel frames and wheels ....") *with* Defendant's Response to Plaintiff's Statement of Material Facts at 2, ¶ 7 ("Admits, except denies that the imported merchandise is properly describable as 'shell cuff assemblies' or 'shells;' rather it is describable as 'skating boots,' or 'skate boots,' or 'boots,' or 'shoes,' or 'footwear'.")

wheels are riveted to the bottom of the boots, resulting in the end product of in-line skates. The merchandise at issue cannot be used for any purpose other than as the boot component of in-line skates. Both parties agree that the boots are unsuitable for walking. The merchandise is not marketed separately nor sold directly to consumers.

Plaintiff has demonstrated that it imports the polyurethane shells solely for use in the manufacture of in-line roller skates. During the manufacturing process the wheel frame is riveted permanently to the bottom of the shell. (Plaintiff's Memorandum, Miller deposition, Exhibit C at 9–10.) [7]

## DISCUSSION

### I.

■ Customs' classification is before this Court for *de novo* review pursuant to 28 U.S.C. § 2638 (1988). Under 28 U.S.C. § 2639(a)(1) (1988), Customs' classification is presumed to be correct, and the burden of proof is upon the party challenging the classification. Thus, in moving for summary judgment, Rollerblade bears the ultimate burden of persuasion on all elements of its asserted claim. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387 (Fed.Cir.1987); *Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc.*, 45 F.3d 1550 (Fed.Cir.1995). The Plaintiff can meet its burden by demonstrating that its classification "may have faults and yet still [is] a *better* classification than the government's." *Jarvis Clark Co. v. United States*, 2 Fed. Cir.(T) 70, 75, 733 F.2d 873, 878, *reh'g denied*, 739 F.2d 628, 2 Fed. Cir (T) 97 (1984).

In considering a motion for summary judgment, however, the evidence must be considered in a light most favorable to the nonmoving party, drawing all reasonable inferences in its favor, as well as all doubts over factual issues. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Anderson*, 477 U.S. at 253, 106 S.Ct. at 2512–2513; *Mingus*, 812 F.2d at 1390–1391. Nevertheless, "when a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." USCIT R. 56(f). Consequently, because there are no factual issues in dispute which might affect the result of this action, summary judgment is appropriate.

### II.

■ The issue presented is whether the imported merchandise should be classified as a "part" of a roller skate or as "footwear" as those terms are used within the tariff schedules.

■ "[A] 'part' of an article is something necessary to the completion of that article. It is an integral, constituent, or component part, without which the article to which it is to be joined, could not *function as such article.*" *United States v. Willoughby Camera Stores, Inc.*, 21 C.C.P.A. 322, 324, T.D. 46851, 1933 WL 1887 (1933), *cert. denied*, 292 U.S. 640, 54 S.Ct. 773, 78 L.Ed. 1492 (1934) (citations omitted, emphasis in the original). More recently, courts have included in the definition of "parts" an article which is "dedicated to a specific use" in conjunction with another item even though its use is optional, *United States v. Antonio Pompeo*, 43 C.C.P.A. 9, 14, C.A.D. 602, 1955 WL 6859 (1955), and have considered "[t]he nature, function and purpose of an item in relation to the article to which it is attached or designed to serve," *Ideal Toy Corporation v. United States*, 58 C.C.P.A. 9, 13, 433 F.2d 801 (1970) (citations omitted).

It is undisputed that the merchandise at issue here is integral to the manufacture of in-line roller skates. Indeed, without the

---

7. Defendant does not offer any evidence to the contrary nor any counter argument. Defendant only asserts that Rollerblade has not met the burden of proving that commercial meaning (definite, uniform and general) should prevail over the common meaning because the testimony does not establish commercial designation of the merchandise as "shell cuff assemblies" so as to preclude classification as "footwear." (Defendant's Memorandum at 23.)

boot, the product would not be complete, and could not function as a roller skate. In addition, Plaintiff has demonstrated that the manufacturing process involves the riveting of the wheel frame to the bottom of the boot. Accordingly, these boots are clearly designed and dedicated to use as parts of a roller skate. Thus, the merchandise at issue here is classifiable as parts of roller skates, *prima facie*, under both tariff schedules.

At the same time, this Court also recognizes that the merchandise—in its condition as imported—is classifiable as "footwear," because the merchandise meets the broad definition contained within the tariff schedules.[8]

▆▆▆ Consequently, because the merchandise is described in both provisions, this Court must determine which of the two classifications is more specific. When an imported article is described in two or more provisions of the schedules, both General Headnote 10(c)[9] of the TSUS and General Rule of Interpretation 3(a)[10] of the HTSUS require this Court to determine which of the two classifications is more specific. Similarly, under both TSUS General Headnote 10(ij) and HTSUS Add. R. of Interpr. 1(c), a provision for parts of an article covers products *solely* or *principally* used as a part of such article, but does not prevail over a

specific provision for such part (or accessory).

Defendant argues that the footwear provisions under 700.56, TSUS and 6402.19.10, HTSUS are *eo nomine* provisions that specifically describe the merchandise by name. Therefore, Defendant argues, the assembly of the Rollerblade boot to function as support and protection for the foot is irrelevant to the classification of that merchandise. (Defendant's Reply Brief at 4.)[11]

▆▆▆ The Court disagrees. "An *eo nomine* designation is one which describes a commodity by a specific name, usually one well known to commerce." *United States v. Paul M.W. Bruckmann*, 65 C.C.P.A. 90, C.A.D. 1211, 582 F.2d 622 (1978). "Footwear," however, is not a term that describes a commodity by a specific name. Rather, it is a term that includes a wide range of different products. *See Webster's Third New International Dictionary* at 886 (1993).[12] For this reason, a whole part of each of the tariff schedules is dedicated to different products that fall within this wide category. As a result, the term "footwear," as it is employed in the statutes, cannot be considered either an *eo nomine* provision or a specific one. Moreover, "use cannot be ignored in determining whether an article falls

---

8. The provisions under which the merchandise was classified cover footwear "having uppers of which over 90 percent . . . is rubber or plastics." *Cf.* 700.56, TSUS and 6402.19.10, HTSUS.

9. TSUS General Headnote 10(c) provides that "an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it; . . . ."

10. HTSUS GRI 3(a) provides, when goods are *prima facie* classifiable under two or more headings, that "the heading which provides the most specific description shall be preferred to headings providing a more general description. . . ."

11. In support of this assertion, Defendant cites *Westinghouse Electric International Co. v. United States*, 28 Cust. Ct. 209, C.D. 1411, 1952 WL 6087 (1952); *Fairchild Camera & Instrument Corp., Inter–Maritime Forwarding Co., Inc. v. United States*, 53 C.C.P.A. 122, C.A.D. 887, 1966 WL 8923 (1966).
   The cases cited by Defendant examine the relationship between a provision for parts and a specific provision covering the article imported.

Under *Westinghouse*, the final use of an article helps to determine whether a provision is more specific than a provision for parts. The final use of the merchandise here is as in-line roller skates. Additionally, under *Fairchild*, a provision for parts is not a use provision and is less specific than an *eo nomine* provision. Following this authority, Defendant argues that, because the footwear provision is an *eo nomine* provision, Plaintiff's proposed classification of the merchandise under parts of roller skates is less specific than the *eo nomine* footwear provision.

12. Courts may rely upon their own understanding of the term used, and may consult dictionaries, scientific authorities, and other reliable sources of information. *Nippon Kogaku (USA), Inc. v. United States*, 69 CCPA 89, 92, 673 F.2d 380 (1982) (citations omitted); *Brookside Veneers, Ltd. v. United States*, 6 Fed. Cir. (T) 121, 847 F.2d 786, 789 (Fed.Cir.1988), *cert. denied*, 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358; *see also Texaco Marine Services, Inc. v. United States*, 44 F.3d 1539 (Fed.Cir.1994).

within an *eo nomine* tariff provision." *United States v. Quon Quon Company*, 46 C.C.P.A. 70, 72–73 (1959). In this case, the final use of the merchandise would lead the Court to classify it as a part of a "roller skate" rather than as "footwear."

Finally, Defendant's argument disregards this Court's earlier holdings that wearing apparel provisions, and therefore footwear provisions, are not *eo nomine* but rather use provisions. *Bata Shoe Co., Inc. v. United States*, 6 Cust. Ct. 50, C.D. 423, 1941 WL 4679 (1941); *Westminster Corp. v. United States*, 78 Cust. Ct. 22, C.D. 4687, 78 Cust.Ct. 22, 432 F.Supp. 1055 (1977).

On the contrary, the term "roller skates" constitutes both an *eo nomine* provision and a specific one. Indeed, this term appears *ictu oculi* to represent a specific designation of a product well known to commerce. When Congress has created an *eo nomine* classification and imposed a duty by such name, general terms, although sufficiently broad to include the article, are not applicable to it. *See Arthur v. Lahey*, 96 U.S. 112, 24 L.Ed. 766 (1877); *C.T. Takahashi & Co., Inc. v. United States*, 74 Cust. Ct. 38, C.D. 4583, 1975 WL 26980 (1975); *W & J Sloane, Inc. v. United States*, 76 Cust. Ct. 62, C.D. 4636, 76 Cust.Ct. 62, 408 F.Supp. 1392 (1976). Therefore, the tariff provision for parts of "roller skates" more specifically describes the merchandise than the use provision covering "footwear."

Defendant also directs the Court's attention to Headnote 1 of Schedule 7, Part 5, Subpart D (encompassing item 734.90, TSUS), which specifically excludes "footwear, other than footwear with skates permanently attached." (Defendant's Memorandum at 23–24.) Similarly, the Defendant emphasizes that Chapter 95 of the HTSUS does not cover "sports footwear (other than skating boots with ice or roller skates attached) of chapter 64." [13] Defendant argues that, because the merchandise is imported without skates permanently attached, it falls within the exception to the general exclusion of footwear from the "roller skate" provisions.

In fact, the provisions which the Defendant cites demonstrate the correctness of the Plaintiff's claim that the merchandise is *a part of a roller skate*. The plain language of the tariff schedule exclusion refers to "boots" or "footwear ... with skates attached." If the merchandise excluded from the footwear classification includes the boot, then the boot is a part of the excluded product. The imported merchandise at issue here forms an integral part of the final roller skate. Therefore, it is excluded from the footwear classification.[14]

Moreover, if this were not the case, it would produce the anomaly that a party importing a *finished product*, wheels, boot and all, incurs no duty liability, whereas a party *assembling the wheels and boot in the U.S.* must pay duties. *See United States v. J.M. Lehman Co., Inc.*, 22 C.C.P.A. 106, 108, T.D. 47081, 1934 WL 2129 (1934) ("It would be anomalous to admit the finished product at a lower rate of duty than applies to the material from which it is produced.").

---

13. HTSUS Chapter 95, Note 1(g).

14. The history of these provisions supports this reading. Under the Tariff Act of 1930, Par. 1530, imported skates were dutiable as "ice skates, and parts thereof." Roller skates were not mentioned in the statute. The *Summaries of Tariff Information* (1948) explained that most ice skates "are designed for permanent attachment to special skating shoes," and that "imported skates are dutiable [as skates] whether or not attached to shoes; the shoes are dutiable [as footwear]." The Tariff Classification Act of 1962, however, introduced a new provision, to cover "skates (including skates permanently attached to footwear), and parts thereof: Roller skates, and parts thereof." The *Tariff Classification Study* (1960), which is a prime source of legislative intent, states that the provision was modified to change the existing customs practice of having to separately value the footwear portion of the product and the blade or wheel portion of the product. The new schedule eliminated this practice "to relieve customs officials of the unnecessary burden of having to determine which part of the value of such imported skates is assignable to the footwear and which is assignable to the skates." *Tariff Classification Study*, Schedule 7, U.S. Tariff Commission at 285 (Nov. 15, 1960). Consequently, Congress expanded the provision for "skates" to include also the footwear subject to permanent attachment of skates, and also introduced a specific item for "roller skates, and parts thereof" which were not dutiable as footwear.

Accordingly, although footwear encompasses boots, the general term "footwear" is inapplicable in this case because the more specific "roller skate" classification applies.

### CONCLUSION

This Court will dismiss Plaintiff's action as to the protest no. 3501–9–000058, and grant summary judgment for the Plaintiff as to the other protests. Defendant's motion for summary judgment is denied. Judgment will be entered and classification made in accordance with this opinion.

IT IS SO ORDERED.

### JUDGMENT

Upon consideration of Defendant's Motion to Stay and Defendant's Motion to Alter or Amend this Court's Judgment of January 17, 1996 in Slip Op. 96–18; upon consideration of Plaintiff's opposition to said motions; and after due deliberation, it is hereby:

**ORDERED** that Defendant's Motion to Stay this Court's Judgment of January 17, 1996 in Slip Op. 96–18 is denied as moot; and it is further

**ORDERED** that Defendant's Motion to Alter or Amend the Judgment of January 17, 1996 in Slip op. 96–18 is granted, and said Judgment is amended to read:

### *JUDGMENT*

Upon reading the parties' motions for summary judgment, upon consideration of all other papers and proceedings had herein, and after due deliberation, having rendered a decision herein, it is hereby:

ORDERED that Plaintiff's action over protest no. 3501–9–000058 and covered entries is denied; and it is further

ORDERED that Plaintiff's motion for summary judgment is granted as to all the other protests and covered entries. The U.S. Customs Service shall reliquidate the subject entries under item 734.90, TSUS, and under heading 9506.70.20, HTSUS, and shall refund all excess duties with interest as provided by law within 60 days from the date this judgment becomes final.